IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| KELI CALDERONE,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, ILLINOIS,<br>a municipal corporation;<br>TENAYA WILLIAMS, in her<br>individual capacity; and, ALICIA<br>TATE-NADEAU, in her individual capacity,<br><br>    Defendants. | Case No. 18-cv-7866<br><br>The Honorable Thomas M. Durkin<br><br>Magistrate Judge Jeffrey T. Gilbert |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF CHICAGO'S MOTION TO DISMISS (DKT. 25) PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COMES, Plaintiff, through her undersigned counsels, Cass Thomas Casper, Esq., Christopher Cooper, Esq., and Gianna Scatchell, Esq., and responds in opposition to Defendant City of Chicago's Motion to Dismiss ("Motion") Plaintiff's First Amended Complaint ("FAC"). Dkt. 25. For the following reasons, Plaintiff asks the Court to deny the Motion.

    I.    **Calderone Has Stated A *Monell* Claim In Count III.**

          **a. The Right To Self-Defense Is Covered By The Second Amendment.**

Defendant first argues that Plaintiff has not pleaded a *Monell* claim against the City because, in the City's view, there is no constitutional right to self-defense under the Second Amendment. Dkt. 25, p. 3. However, Defendant spends no time discussing the key case in this jurisdiction that establishes such right, *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) ("*Moore*"). Dkt. 25, pp. 3-5.

*Moore* could not be clearer that there is a Second Amendment right to bear arms for self-defense outside of the home. Judge Posner begins his opinion by framing the case with that very

question, stating, "the Supreme Court has not yet addressed the question whether the Second Amendment creates a right of self-defense outside the home." *Id.* at 935. He then concludes, based on a plain language analysis, that the "right to bear arms thus implies a right to carry a loaded gun outside the home" and acknowledges that "one doesn't have to be a historian to realize that a right to keep and bear arms for personal self-defense in the eighteenth century could not rationally have been limited to the home." *Id.* at 936. Indeed, Judge Posner read *Heller* as inferring from English law "a right to possess guns for resistance, self-preservation, self-defense, and protection against both public and private violence" and that "[t]he Court [in *Heller*] said American law was the same." *Id.* at 937. He also pointed out that "a Chicagoan is a good deal more likely to be attacked on a sidewalk in a rough neighborhood than in his apartment. . ." and that "[a] woman who is being stalked. . .is more vulnerable to being attacked while walking to or from her home than when inside. She has a stronger self-defense claim to be allowed to carry a gun in public. . ." *Id.* Judge Posner then concluded that "[t]o confine the right to be armed to the home is to divorce the Second Amendment from the right of self-defense described in *Heller* and *McDonald*." *Id.* He goes so far as to expressly recognize that "a curtailment of the <u>right of armed self-defense</u> requires a greater showing of justification than merely that the public *might* benefit on balance from such a curtailment. . ." *Id.* at 940. And that "the interest in self-protection is as great outside as inside the home." *Id.* at 941. In the final paragraph of *Moore*, Judge Posner outright concludes that *Heller* means that there is "<u>a right to bear arms for self-defense, which is as important outside the home as inside</u>," and that "[t]he theoretical and empirical evidence (which is overall inconclusive) is consistent with <u>concluding that a right to carry firearms in public may promote self-defense</u>." *Id.* at 942 (emphases added).

But the Court need only further consult Judge Williams' dissenting opinion in *Moore* to further conclude that the decision recognizes a clearly-established right to carry firearms for self-defense outside of the home. *Id.* at 943 (J. Williams). In the dissent, Judge Williams reads *Heller* and *McDonald* as not resolving the question of whether "the Second Amendment also requires a state to allow persons to carry ready-to-use firearms in public for potential self-defense." *Id.* He disagrees with the majority that an historical analysis leads to the conclusion that there was a "widely understood right to carry ready-to-use arms in public for self-defense" "at the time of the founding." *Id.* at 944. Judge Williams concludes his dissent by noting that, "[i]n the absence of clearer indication that the Second Amendment codified a generally recognized right to carry arms in public for self-defense, I would leave this judgment in the hands of the State of Illinois." *Id.* at 954. While Judge Williams might have disagreed with the scope of the majority's opinion, for the present purposes his dissent is just evidence that there is, indeed, a constitutional right to self-defense recognized in this jurisdiction in the majority opinion in *Moore v. Madigan*.

Defendant merely states about *Moore* that it extended the right "to carry a gun outside one's home." Dkt. 25, p. 4. But that too simplifies *Moore*, which is rife with the language linking the right to bear arms outside of the home to self-defense. All of the quotations just noted from Judge Posner's majority opinion inextricably link the "carrying" of the firearm with "self-defense." Indeed, Defendant's view in this case, if true, would mean that there is a right to carry a firearm for self-defense outside of the home, but not to use said firearm for self-defense outside of the home. That view is self-eviscerating by suggesting that *Moore* means that the Second Amendment allows citizens to carry firearms outside of the home, without being able to use them for the central purpose of so doing that *Moore* weaves throughout, self-defense. What

is left of *Moore* if Defendant's narrow reading is correct?  Defendant's other cited cases are either pre-*Moore* (such as *Jones v. Cross*, 637 F.3d 841, 848 (7th Cir. 2011); *Rowe v. DeBruyn*, 17 F.3d 1047, 1052 (7th Cir. 1994)), or does not involve a Second Amendment-based constitutional right relating to carrying firearms for self-defense (*Pickett v. Chicago Transit Auth.*, No. 16 C 4337, 2017 WL 1652591, at *5 (N.D. Ill. May 2, 2017)).  Dkt. 25, p. 4.

Defendant also too narrowly reads the FAC by stating "Calderone does not allege she was terminated because she exercised a Second Amendment right to possess or carry a lawful weapon. . .Calderone alleges she was terminated for using a firearm in self-defense." Dkt. 25, p. 5.  Defendant is really arguing here about the reasons for Plaintiff's termination with this statement, and attempting to imply that Plaintiff was terminated for reasons *other than using a firearm*.  But that reading requires that the Court go beyond the pleadings, assume factual issues in Defendant's favor, and jump ahead to a summary judgment motion without the benefit of discovery.  At the pleadings stage, Plaintiff gets the benefit of factual assumptions and inferences – and, as pleaded, Plaintiff's case is that she was fired for using her lawfully-carried firearm for self-defense.  Dkt. 20, ¶¶13, 14, 16, 17, 22, 24, 36, 37, 41, 42, 43.  But assumptions and inferences do not even have to be made, for the FAC clearly spells out, using the City's own language, the reasons she was fired: "you shot Selene Garcia about the body" (Dkt. 20, ¶24(a)); "you discharged a firearm and caused injury to another person, to wit: you shot Selene Garcia about the body" (Dkt. 20, ¶24(b)); "Based on the foregoing actions, you engaged in conduct unbecoming. . ." (Dkt. 20, ¶24(c)).  The Defendant's attempt to hint that Calderone was fired for other reasons in its Motion, therefore, not only is contrary to the standards for this Motion are, but belied by the City's own admissions clearly-pleaded in Paragraph 24 of the FAC establishing exactly why Calderone was fired.

4

Defendant also is not correct that Calderone pleads only a right to use a firearm in a certain way, for Calderone actually pleads that the individual Defendants "deprived CALDERONE of her Second Amendment *right to keep and bear arms for self-defense* by terminating her employment as a PCO II because CALDERONE used her lawfully carried firearm in self-defense." Dkt. 20, ¶43 (emphasis added). Accordingly, based on the foregoing, Defendant's Motion is incorrect, there is a Second Amendment right to keep and bear arms for self-defense.

> **b. The Personnel Rules As Applied To Plaintiff Violated Her Second Amendment Rights.**

Defendant next argues that Plaintiff has not adequately pleaded a *Monell* claim under the "express policy" prong because "nothing in the language of the Personnel Rules cited by Plaintiff explicitly bans an employee from acting in self-defense" and because, alternatively, Calderone has not established that anyone other than herself was deprived of their Second Amendment constitutional rights based on gaps in the Personnel Rules. Dkt. 25, pp. 5-6. The problem with Defendants' argument is that they too narrowly read the First Amended Complaint and the case law cited.

The key to this Count is the way the City applied these express policies to Calderone, which is delineated in Paragraph 24 of the FAC. Dkt. 20, ¶24. In each instance, the three express policies are applied to Calderone because Calderone "shot Selene Garcia about the body." In fact, Paragraph 24(a) pleads that "you, in committing a battery, knowingly discharged a firearm, other than a machine gun or a firearm equipped with a silencer, and caused any injury to another person, to wit: you shot Selene Garcia about the body. In doing so, you violated 720 ILCS 5/12-3.05(e)(1). . .and City of Chicago Personnel Rule XVIII, Section 1, Subsection 15." It is *exactly* Calderone's action in self-defense with a firearm that the City used to find that she

5

violated Subsection 15. This Rule, in particular, contains suspect language because it applies to the discharge of all firearms without limitation.

Paragraph 24(b) pleads the same thing with respect to Subsection 23 of the same Personnel Rule, "you shot Selene Garcia about the body. In doing so, you engaged in discourteous treatment, including verbal abuse, of any other City employee or member of the public, in violation of City of Chicago Personnel Rule XVIII, Section 1, Subsection 23." Again, it is *exactly* Calderone's action in self-defense that the City used to find that she violated Subsection 23. Finally, the Paragraph 24(c) pleads that "**[b]ased on the foregoing actions**, you engaged in conduct unbecoming a City of Chicago employee, in violation of City of Chicago Personnel Rule XVIII, Section 1, Subsection 50." Once again, it is *exactly* Calderone's action in self-defense that the City used to find that she violated Subsection 50. *That* is the express policy, that where an employee shoots someone – in this case Selene Garcia – the employee violates Subsection 15, 23 and 50 of the City's Personnel Rules. Paragraph 24 clearly states this, and Paragraph 66 emphasizes that those three rules, applied to Plaintiff, caused the deprivation.

Defendants read *Calhoun v. Ramsay*, 408 F.3d 375 (7th Cir. 2005) too narrowly. They seem to suggest that to satisfy the "express policy" theory of *Monell* liability, the policy must spell out exactly how it is violating constitutional rights. But *Calhoun* gives a good example of policy that would violate constitutional rights on its face: where a jail had a policy that directed "the sheriff's personnel to throw away all prescription medications brought in by detainees or prisoners without even reading the label and without making alternative provisions for the affected individuals." *Id.* at 379-380. Actually, such a policy does not spell out a constitutional violation either, it is the application of such policy that results in a constitutional violation. That is what *Calhoun* meant when the Court then wrote that "one application of the offensive policy

6

resulting in a constitutional violation is sufficient to establish municipal liability." *Id.* That is what has happened in this case: the City has three express policies that it applied to Calderone that violated her Second Amendment to carry a firearm for self-defense, specifically Subsections 15, 23, and 50. Dkt. 20, ¶65 (pleading "Rules that were <u>applied to</u> Plaintiff in this case that directly caused the deprivation of Plaintiff's Second Amendment rights. . ."). One instance of this is sufficient under *Calhoun*.

II. <u>**Calderone States A Valid As-Applied Void-For-Vagueness/Overbreadth Challenge.**</u>

The vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly, and, second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *See, e.g.*, *Grayned v. City of Rockford,* 408 U.S. 104, 108–09 (1972). In cases where the "statute abuts upon sensitive areas of basic First Amendment freedoms," *Grayned,* 408 U.S. at 108–09, 92 S.Ct. 2294(brackets omitted), "rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Fox Television Stations,* 132 S.Ct. at 2317. Even under the heightened standard for the First Amendment, though, the potential chilling effect on protected expression must be both "real and substantial" to invalidate a statute as void for vagueness in a facial challenge. *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216 (1975). In addition, a "plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

Plaintiff concedes that the usual application of the overbreadth doctrine is in the First Amendment context, but that is no reason why the doctrine cannot be applied in a situation like this, where Plaintiff is fundamentally alleging that she was not on notice that using her own handgun in self-defense would result in her termination under Subsections 15, 23, and 50 of the Personnel Rules. Indeed, there is nothing in the Rules pleaded in the FAC that gives any notice that they would be so applied to Calderone or anyone else. This implicates both of the central due process concerns present in *Grayned v. City of Rockford*, and it must be noted that the Sections 15 and 25 in particular directly abut sensitive areas of Second Amendment freedom as they were applied to Plaintiff in this case.

For the foregoing reasons, the Defendant's Motion should be denied as to the overbreadth/vague-as-applied challenge.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this Honorable Court deny Defendant City of Chicago's Motion to Dismiss Plaintiff's First Amended Complaint in its entirety. Dkt. 25.

Respectfully submitted,

*/s Cass T. Casper*

_____
Plaintiffs' Attorneys
Electronically filed: March 15, 2019

*Cass T. Casper, Esq.*
TALON LAW, LLC
79 West Monroe Street, Suite 1213
Chicago, Illinois 60603
P: (312) 351-2478 F: (312) 276-4930 E: ctc@talonlaw.com

*Christopher Cooper, Esq.*
Law Offices of Christopher Cooper, Inc.

79 West Monroe Street, Suite 1213
Chicago, Illinois 60603
P: (312) 371-6752 E: cooperlaw3234@gmail.com

*Gia Scatchell, Esq.*
Law Offices of Gia Scatchell
360 West Hubbard, 1404
Chicago, Illinois 60654
P: (312) 248-3303 E: gia@lawfirm.gs

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that the foregoing document and all attachments and supplements thereto were served upon counsel for Defendants noted below via this Court's ECF filing system, and that such counsels are registered e-filers.

Mark Bereyso, Esq.          mark.bereyso@cityofchicago.org
Jessica Durkin, Esq.         jessica.durkin@cityofchicago.org

*s/Cass T. Casper*